

ORIGINAL

SEALED

DSI33448

**USAIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2021 SEP -3  PM 12: 30

DEPUTY CLERK_____

|  |  |  |
|---|---|---|
| United States of America<br>*ex rel.* Blake N. Staub, M.D., | § |  |
|  | § |  |
| *Relator,* | § |  |
|  | § |  |
| Bringing this Action on Behalf of<br>the United States of America | § |  |
|  | § |  |
| c/o Prerak Shah<br>Acting United States Attorney<br>Northern District of Texas<br>1100 Commerce Street, Third Floor<br>Dallas, Texas 75242, | § | **3-21CV2113-X**<br><br>Civil Action No. _____ |
|  | § |  |
| *Plaintiff,* | § |  |
|  | § | *Qui Tam* Complaint |
| vs. | § |  |
|  | § |  |
| Spinal Simplicity, L.L.C.,<br>Nomen Azeem, M.D.,<br>Ashley Bailey-Classen, D.O.,<br>Doulas Beall, M.D., William Binegar, M.D.,<br>Sudhir Diwan, M.D., Anthony Giuffrida, M.D.,<br>Michael Hanes, M.D., Paul Hubbell, M.D.,<br>Andrew Huff, M.D., Gabrielle Jasper, M.D.,<br>Yousseff Josephson, D.O., Ralph Justiz, M.D.,<br>Dan Kloster, M.D., Bowlva Lee, D.O.,<br>Al Marti, M.D., Mike Martinez, D.O.,<br>Robert Muscio, M.D., Daniel Nelson, M.D.,<br>Dan Nguyen, M.D., Jeffery Rowe, M.D.,<br>Adam Savage, M.D., James Sigler, M.D.,<br>Bryan Skulpoonkitti, D.O.,<br>Chad Stephens, D.O., Scott Thompson, M.D.,<br>Christopher Vaughn, M.D.,<br>Baber Younas, M.D., and John Does 1-100, | § | **Jury Trial Demanded**<br><br>Filed *In Camera* and under Seal<br>Pursuant to 31 U.S.C. § 3730(b)(2) |
|  | § |  |
| *Defendants.* | § |  |

## RELATOR'S ORIGINAL COMPLAINT

Relator Blake N. Staub, M.D. ("Dr. Staub") brings this action on behalf of the United States

against Spinal Simplicity, L.L.C. ("Spinal Simplicity"), Nomen Azeem, M.D., Ashley Bailey-

RELATOR'S ORIGINAL COMPLAINT – Page 1
0143806.0740097  4848-2631-5998v2

Classen, D.O., Doulas Beall, M.D., William Binegar, M.D., Sudhir Diwan, M.D., Anthony Giuffrida, M.D., Michael Hanes, M.D., Paul Hubbell, M.D., Andrew Huff, M.D., Gabrielle Jasper, M.D., Yousseff Josephson, D.O., Ralph Justiz, M.D., Dan Kloster, M.D., Bowlva Lee, D.O., Al Marti, M.D., Mike Martinez, D.O., Robert Muscio, M.D., Daniel Nelson, M.D., Dan Nguyen, M.D., Jeffery Rowe, M.D., Adam Savage, M.D., James Sigler, M.D., Bryan Skulpoonkitti, D.O., Chad Stephens, D.O., Scott Thompson, M.D., Christopher Vaughn, M.D., Baber Younas, M.D. (collectively, the "Physicians"), and John Does 1-100 ("Does") (Spinal Simplicity, the Physicians, and Does are hereafter collectively "Defendants") for treble damages and civil penalties arising from the Defendants' false statements and false claims in violation of the Federal False Claims Act, 31 U.S.C. § 3729, *et seq.* (the "FCA"), Texas Patient Solicitation Act (Tex. Occ. Code § 102.001, *et seq.*), *et seq.* (the "TPSA") and the Medicare Protection Act of 1987 (the "Anti-Kickback Statute" or "AKS"), 42 U.S.C. § 1320a-7b, and alleges as follows:

## I.
## PRELIMINARY STATEMENT

1.      Spinal Simplicity, L.L.C. ("Spinal Simplicity") claims to be a company dedicated to the creation of innovative simple solutions for complex spinal problems and products that are designed to further enhance patient care. Unfortunately, Spinal Simplicity's use of products, training of physicians, and patient care fall well short of the standards of medicine.

2.      Spinal Simplicity was founded in 2008 by Dr. Harold Hess ("Dr. Hess") and Todd Moseley ("Moseley"). The goal of Spinal Simplicity is to compete in the fast-growing, minimally invasive spine surgery market.

3.      Instead, what has transpired is fraud. Spinal Simplicity's company name comports with a business model and marketing plan whereby it promotes a surgical procedure that should be conducted by specially trained surgeons but is marketed towards pain doctors.

4.      Spinal Simplicity claims that its Minuteman devices work and are simple to implement—so simple that a non-surgeon pain doctor can now operate on a patient's spine. Spinal Simplicity and its associated pain doctors tout this product, and its purported quick fix, all over social media.

5.      Further, Spinal Simplicity and the physicians across the country utilizing the Minuteman devices are conducting improper surgeries that not only disregard FDA guidelines, but are grossly deficient, materially substandard, and/or worthless, and results in serious physical and emotional harm. They are seeking and receiving payment from federally funded health care programs for those surgeries and in the process, violating the AKS and the FCA. These physicians are also seeking and receiving payment from private payors such as Blue Cross Blue Shield, Aetna, and others.

## II.
## PARTIES

6.      Plaintiff, the United State of America, acting through the Department of Health and Human Services ("DHHS"), administers the Health Insurance Program for the Aged and Disabled, established by Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.* ("Medicare").

7.      Relator, Blake N. Staub, M.D., is a resident of Dallas, Texas, and a citizen of the United States. Dr. Staub is a neurosurgeon in the Dallas area. In his capacity as a neurosurgeon, Dr. Staub understands and can attest to medical procedures—specifically, spine surgeries—how they are conducted, whether they are medically necessary, and if they put patients in harm's way. Dr. Staub has direct and independent knowledge of the information on which the allegations in this Complaint are based.

8.      Spinal Simplicity is a privately held Kansas limited liability company, with its principal place of business in Overland Park, Kansas. Its registered agent is Jon W. Gilchrist,

11000 King, Overland Park, Kansas 66210. Spinal Simplicity's primary business is to provide innovative simple solutions for complex spinal problems with a focus on enhanced patient care.

## A.    Doctors

9.    The Physicians and Does are medical doctors and osteopaths from across the State of Texas and around the country. Upon information and belief, these Physicians have partnered with Spinal Simplicity to gain access to potential patients and illegally bill insurance companies and the United States for grossly deficient, materially substandard, and/or worthless medical procedures, placing spinal hardware in patients that have substantial potential for catastrophic failure which could result in permanent and debilitating physical disabilities, and even death.

## III.
## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, as well as 31 U.S.C. § 3730(b).

11.    This Court has personal jurisdiction over Defendants under 31 U.S.C. § 3732(a) because some of the Defendants can be found, and transact business, in this judicial district and have committed acts within this judicial district that are proscribed by 31 U.S.C. § 3729.

12.    Venue is proper in this Court under 28 U.S.C. 1391 (a)-(c) and 31 U.S.C. § 3732(a) because Defendants can be found in, and transact business, in this judicial district and have committed acts within this judicial district that are proscribed by 31 U.S.C. § 3729.

13.    The facts and circumstances of Defendants' violations of the FCA and the AKS have not been publicly disclosed in a criminal, civil or administrative proceeding; or in any legislative, administrative, or inspector general report, hearing, audit or investigation, or in the media.

14.     Relator is the original source of the information upon which this Complaint is based, as that phrase is used in the FCA at 31 U.S.C.A. § 3730(e)(4)(B), and, prior to filing the Complaint, has served voluntary written disclosures to the United States of substantially all material evidence and information in his possession. Moreover, the allegations made in the Complaint have not been publicly disclosed in: (i) a Federal criminal, civil or administrative hearing in which the United States, or its agent, is a party; (ii) a congressional, Government Accountability Office or other federal report, hearing, audit, or investigation; or (iii) the news media.

## IV.
## RELATOR: BLAKE N. STAUB, M.D.

15.     Dr. Blake N. Staub has been a medical doctor for over a decade. He is a board-certified neurosurgeon with fellowship training in minimally invasive, and complex deformity spine surgery. Dr. Staub's extensive training and practice as a neurosurgeon with subspecialized training in the treatment of spinal disorders, affords him a strong working knowledge of health care laws and regulations, as well as the fine intricacies of spine surgery and its potential complications.

16.     Dr. Staub became a medical doctor after earning his bachelor's degree in biology from Emory University in 2005 and earned his medical degree at the University of Texas Southwestern Medical School in 2009. After medical school, Dr. Staub completed his neurological surgery residency at Houston Methodist Hospital. After seven years of training and performing over a thousand spine surgeries, Dr. Staub was recruited to the Hospital for Special Surgery in New York to train under numerous world-renowned spine surgeons, including Drs. Frank Schwab, Todd Albert, Frank Cammisa, and other luminaries in the field.

17.    Dr. Staub began his practice in 2017 at the locally and nationally acclaimed Texas Back Institute. An average week would have Dr. Staub seeing nearly ninety patients in the clinical setting and performing 5-10 surgeries including, but not limited to, minimally invasive decompression and fusion procedures, complex scoliosis and spinal revision surgeries, and the removal of bony and intrinsic spinal cord tumors. Dr. Staub routinely treats diagnoses such as spondylolisthesis, degenerative disc disease, trauma, and tumors. He reviews and interprets countless MRI scans, CT scans, and spinal x-rays on a weekly basis. He also serves on the Peer Review Committee of the Texas Back Institute. This group comprises a small subset of the group's partners who are elected to review and approve many of the cases all other surgeons in the practice propose to perform.

## V.
## APPLICABLE STATUTES AND REGULATIONS

A.    **The Medicare Program – Title XVII of the Social Security Act
(42 U.S.C.S §§ 1395-95ccc)**

18.    The Medicare Program was enacted in 1965 by Congress to pay for the costs of certain health services. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. Title XVIII of the Social Security Act; 42 U.S.C. §§ 426, 426A.

19.    Under the Medicare Program, the Centers for Medicare and Medicaid Services ("CMS") makes payments to physicians, or their practice, after services are rendered to the patient. Medicare enters into provider agreements with these physicians and entities to establish their eligibility to participate in the Medicare Program.

20.    As detailed below, the Physicians, Does, and Spinal Simplicity have knowingly submitted, or caused to be submitted, claims for specific services provided to individual beneficiaries *and* claims for general and administrative costs incurred in treating Medicare and private-payor beneficiaries.

RELATOR'S ORIGINAL COMPLAINT – Page 6
0143806.0740097  4848-2631-5998v2

21.    Upon information and belief, the Physicians and Does have participated in the Medicare Program. To that end, each of them has knowingly and periodically signed an application for participation in the Medicare Program (CMS Form 855A) and submitted it to the United States. Included in the CMS Form 855A is a "Certification Statement," containing, *inter alia*, the following language:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to this provider.... I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law) and on the provider's compliance with all applicable conditions of participation in Medicare.

22.    Upon information and belief, the Physicians and Does have participated in, and are contracted with, numerous private insurers. To that end, each of them has knowingly and periodically signed a contract to become an in-network provider with the private insurer.

## VI.
## THE LAW

**A.    The Federal Anti-Kickback Statute — 42 U.S.C. § 1320a-7(b)**

23.    The AKS prohibits a party from receiving "any remuneration," in any form, whether direct or indirect, in return for "referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a federal health care program." 42 U.S.C.A. § 1320a-7(b)(1)(A). It also prohibits any party from paying such remuneration. 42 U.S.C.A. § 1320a-7(b)(2)(A).

24.    The term "any remuneration" encompasses any kickback, bribe, payment, benefit, or rebate, direct or indirect, overt, or covert, cash or in-kind. 42 U.S.C. 31320a-7b(b)(l). It includes sums for which no actual service was performed, *and* sums for which some service was performed. The statute has been interpreted to cover any arrangement where even one purpose of the remuneration was to obtain money for the referral of services or to induce further referrals.

25.     Under the AKS, both criminal and civil penalties apply, including civil monetary penalties, and the sanction and/or exclusion from federal health benefit programs. The AKS was enacted because of Congressional concerns that payments made in return for referrals would lead to over-utilization, poor medical judgment, and restrict competition, ultimately resulting in substandard care being delivered to patients.

26.     In addition to prohibiting payments designed to induce referrals, the AKS also forbids a person or entity receiving a prohibited referral from presenting, or causing to be presented to Medicare, any claim for referrals that are induced by kickbacks. Importantly, the Patient Protection and Affordable Care Act of 2010 (the "ACA") amended the AKS to further provide that a claim submitted for reimbursement to a federally funded health care program for items or services provided as the result of a referral, in violation of the AKS, is deemed to be "false" under the FCA. 42 U.S.C. § 1320a-7b(g).

27.     The ACA also amended the AKS to expressly state neither actual knowledge of the AKS *nor* a specific intent to violate it is an essential element of a violation of the statute. 42 U.S.C. § 1320a-7b(h). Prior to the passage of that amendment, the United States Court of Appeals for the Fifth Circuit stated that a violation of the AKS was knowing and willful when the defendant had knowledge that the conduct in question was unlawful and that it was committed with the specific intent to do something the law forbids, although the defendant need not have had knowledge of the specific law allegedly violated. *United States v. Davis*, 132 F.3d 1092 (5th Cir. 1998).

28.     Violation of the statute constitutes a felony punishable by a maximum fine of $25,000, imprisonment up to five years, or both. Any party convicted under the AKA must be excluded (*i.e.*, not allowed to bill for any services rendered) from federal health care programs for a term of at least five years. 42 U.S.C. § 1320a-7(a)(1). Even without a conviction, if the Secretary of HHS finds, administratively, that a provider has violated the AKS, the Secretary may exclude

that provider from federal health care programs for a discretionary period and may impose administrative sanctions of $50,000 per kickback violation. 42 U.S.C. § 1320a-7(b).

29.     HHS has published safe harbor regulations which define practices that are not subject to the AKS because such practices would likely result in fraud or abuse. 42 C.F.R. § 1001.952. Such safe harbor protection is only afforded to those arrangements that precisely meet all the conditions set forth in the safe harbor regulations. Regarding referrals from investors to a practice or physician such as the Physicians and Does, no more than 40% of the entity's gross revenue can come from such referrals, and the terms offered to investors must have no relation to expected volume of referrals or require that an investor make referrals to the entity. OIG Special Fraud Alert on Joint Venture Arrangements, 59 Fed. Reg. 65373-74 (Dec. 19, 1994). The Alert specifically noted that one of the red flags marking such an entity as suspect under the AKS would include the joint venture choosing investors *because* they are in a position to make referrals. *Id.*

**B.      The Federal False Claims Act, 31 U.S.C.A. §§ 3729(a), *et seq.***

30.     The FCA, at 31 U.S.C.A. 3729(a), provides, *inter alia*, that:

[A]ny person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or   statement material to a false or fraudulent claim; (C) conspires to committee a violation of subparagraph (A), (B) ... or (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person

31.     The FCA, at 31 U.S.C.A. 3729(b), further provides, *inter alia*, that:

For purposes of this section – (1) the terms "knowing" and "knowingly" (A) mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) no proof of specific intent to defraud is required.

C.   **The Texas Patient Solicitation Act (Tex. Occ. Code § 102.001, *et seq.*)**

32.   A person commits an offense if the person knowingly offers to pay or agrees to accept, directly or indirectly, overtly or covertly, any remuneration in cash or in kind, to or from another for securing or soliciting a patient or patronage for or from a person licensed, certified, or registered by a state health care regulatory agency.

33.   Further, § 102.001 permits any payment, business arrangement, or payment practice permitted by 42 U.S.C. Section 1320a-7b(b) or any regulation adopted under that law.

## VII.
## THE FRAUD SCHEME

A.   **Spinal Simplicity, Physicians and John Does Purposely Mislabeled and Intentionally Misused Its Product in Order to Mislead the Public with Dangerous Consequences**

34.   Upon information and belief, Spinal Simplicity has engaged in a scheme whereby Spinal Simplicity would recruit and train physicians who are not qualified to implant its device in a manner that satisfies FDA approval for the device. Specifically, Spinal Simplicity is purposely and knowingly mis-marketing its product to physicians across the country who are not spine surgeons, for these physicians to use its Minuteman device for the purpose of performing "spinal fusion" surgeries on unwitting patients. The Defendants then perform this medical procedure that is grossly deficient, materially substandard, and/or worthless and falsely and/or fraudulently represented or certified, or caused to be represented or certified, that such claims were properly payable by Medicaid, Medicare or private payor.

35.   Spinal Simplicity's description of its product and indications for its use are:

The Minuteman® is a minimally invasive, interspinous-interlaminar fusion device intended for the fixation and stabilization of the thoracic, lumbar, and sacral spine while awaiting bony fusion to occur The Minuteman® is designed for attachment to the posterior non-cervical spine at the spinous processes through its bilateral locking plates, and it is intended for use with bone graft material placed within the device.

RELATOR'S ORIGINAL COMPLAINT – Page 10

0143806.0740097  4848-2631-5998v2

The Minuteman MIS Fusion Plate is … intended for use with bone graft material and is not intended for stand-alone use. The Minuteman MIS Fusion Plate may be implanted via a minimally invasive lateral (L1-S1) approach. It is intended for plate fixation/attachment to spinous processes for the purpose of achieving supplemental fusion in the following conditions: degenerative disc disease, spondylolisthesis, trauma, and tumor.

36.    Upon information and belief, Spinal Simplicity is marketing to and training physicians that its products, the Minuteman G3-R and The Minuteman, are products that can be used as standalone devices—representations that directly contradict Spinal Simplicity's own product statement quoted above.

37.    On Spinal Simplicity's own Internet site, the company writes that The Minuteman "is not intended for stand-alone use." Yet Spinal Simplicity's marketing material, webinars, social media materials, and YouTube videos clearly advocate that The Minuteman *should*, and *can*, be used as a stand-alone device. Allowing the Minuteman to be a stand-alone device turns the medical procedure into a grossly deficient, materially substandard, and/or worthless medical procedure.

38.    Further still, Spinal Simplicity received a letter from the Department of Health & Human Services, on two separate occasions, informing the company that the products delivered, to be used by physicians and placed into beneficiaries, are not intended for stand-alone use.

39.    Spinal Simplicity cites its products are approved by the FDA for "achieving supplemental fusion and fixation in place of pedicle screw instrumentation after an interbody fusion has been performed."[1] However, Spinal Simplicity, through its officers—not employees—and representatives, has made the conscious decision to exceed FDA guidelines and market its products as a stand-alone device.

40.    The Physicians and Does are not spine surgeons; they are anesthesiologists, physical medicine and rehabilitation, and pain management doctors, none of whom have

---

[1] *See* https://spinalsimplicity.com/.

orthopedic or neurosurgical training. When physicians who are not specially trained spine surgeons place these devices in a stand-alone fashion—or at all—they are operating outside their scope of practice based upon their training.

41.    Following the grossly deficient, materially substandard, and/or worthless surgery, physicians must submit false claims to Medicare and other government and private insurers to obtain payment. Thus, to receive payment for a spinal fusion procedure, the Physicians and Does must falsify surgical notes and billing records to conceal the true nature of the surgery; *i.e.*, implantation of the Spinal Simplicity device as a stand-alone remedy which equates to a grossly deficient, materially substandard, and/or worthless procedure.

42.    Many of the physicians who perform these stand-alone fusions using Spinal Simplicity's products frequently post their results on social media. Often, these posts are "liked" or commented on by Spinal Simplicity representatives. The company has gone as far as advertising these social media "success stories" via its own Twitter and LinkedIn profiles.

43.    Spinal Simplicity claims to further enhance patient care when the opposite is the case:  Spinal Simplicity is marketing its product for an off-label use, such that it is potentially increasing the likelihood of patient harm and turning a complex spine surgery into a grossly deficient, materially substandard, and/or worthless surgery that will only cause the patient more harm than help.

44.    Spinal Simplicity, the Physicians, and Does have ignored the FDA, ignored a physician inquiry, and have ignored their Hippocratic Oath, specifically, "I will do no harm."

45.    The extent of damage to the United States, the State of Texas, and potentially other states is currently unknown. However, every surgery the Physicians and Does perform generates tens of thousands of dollars, not only for the physician but also for Spinal Simplicity. Upon

information and belief, the value of these surgeries, which were billed to Medicare and private insurers, is in the millions of dollars.

## VIII.
## CLAIMS

### COUNT 1:  Violations of The Federal False Claims Act
### 31 U.S.C.A. §§ 3729(a)(1)(A)-(B) for Violations of the AKS

46.    Plaintiffs incorporate by reference all paragraphs 1-45 above, as if fully set forth herein.

47.    Defendants made, used, or caused to be made or used, false records or statements in preparation of false or fraudulent claims which were then paid or approved by the United States, private insurers, and the State of Texas.

48.    Said false records or statements were made knowingly, or with reckless disregard, or deliberate ignorance of whether they were false.

49.    By virtue of the false and fraudulent claims made by Defendants, the United States has suffered damages and is therefore entitled to recovery as provide by the False Claims Act in an amount to be determined at trial, plus civil penalty of at least $11,665.00 and not more than $23,351.00 for each violation.

### COUNT 2:  Violations of The Federal False Claims Act
### 31 U.S.C.A. §§ 3729(a)(1)(B) and 3729(a)(2) For Use of False Statements

50.    Plaintiffs incorporate by reference all paragraphs 1-49 above, as if fully set forth herein.

51.    Defendants made, used, or caused to be made or used, false records or statements in preparation of false or fraudulent claims which were then paid or approved by the United States, private insurers, and the State of Texas.

52.     Said false records or statements were made knowingly, or with reckless disregard, or deliberate ignorance of whether they were false.

53.     By virtue of the false and fraudulent claims made by Defendants, the United States, private insurers, and the State of Texas have suffered damages and are therefore entitled to recovery as provided by the False Claims Act, in an amount to be determined at trial, plus civil penalty of at least $11,665.00 and not more than $23,351.00 for each violation.

**COUNT 3:  Violations of The Travel Act**
**(Texas Patient Solicitation Act – Tex. Occ. Code § 102.001, *et seq.*)**
**[Violations of 18 U.S.C. § 1952]**

54.     Plaintiffs incorporate by reference all paragraphs 1-53 above, as if fully set forth herein.

55.     Defendants made, used, or caused to be made or used, false records or statements in preparation of false or fraudulent claims which were then paid or approved by private insurers.

56.     Said false records or statements were made knowingly, or with reckless disregard, or deliberate ignorance of whether they were false.

57.     By virtue of the false and fraudulent claims made by Defendants, the United States, private insurers, and the State of Texas have suffered damages and therefore are entitled to recovery as provide by the False Claims Act in an amount to be determined at trial, plus civil penalty of at least $11,665.00 and not more than $23,351.00 for each violation for each violation.

**COUNT 4:  Worthless Services**

58.     Plaintiffs incorporate by reference all paragraphs 1-57 above, as if fully set forth herein.

59.     The Defendants are individuals, corporations, partnerships, or other organizations which have assumed responsibility for the care of their patients. The Defendants submitted false claims to the government for the provision of grossly substandard care, in violations of their

RELATOR'S ORIGINAL COMPLAINT – Page 14

0143806.0740097  4848-2631-5998v2

statutory and regulatory duty under the Medicare and Medicaid programs, as well as regulatory obligations under Texas law.

60.    The Defendants have exploited their patients' pain and suffering by receiving federal and private funds intended to help patients and instead, acted without regard for the patients' well-being.

61.    Here, the Defendants knowingly requested federal reimbursement for a procedure with no medical value. The "procedure" performed by these Defendants is so deficient that, for all practical purposes, it is the equivalent of no performance at all. In fact, this "procedure" is not only deficient, but dangerous and likely to cause patients more severe problems in the future.

62.    Further, under belief, the Defendants would have used CPT Codes 22612 for the fusion, and 22869 for insertion of the device. However, when reviewing the surgical procedure, there was no fusion. The surgery was not complete, as they did not employ an interbody fusion or any other form of fusion, thus making The Minuteman a stand-alone device.

63.    The Defendants knowingly provided, or caused to be provided, grossly inadequate, materially substandard and/or worthless services to all their patients, and falsely or fraudulently represented or certified, or caused to be represented or certified, that such claims were properly payable by Medicaid and Medicare, private insurers, and the State of Texas.

### COUNT 5: Conspiracy to Commit Wire Fraud and Mail Fraud

64.    Plaintiffs incorporate by reference all paragraphs 1-63 above, as if fully set forth herein.

65.    Defendants knowingly devised a scheme to defraud United States, private insurers, and the State of Texas, to be paid monies for surgeries and the surgical implementation of FDA-approved devices in an improper and harmful way, and to receive hundreds of thousands of dollars

by wire transfer and through the United States Postal Service, for the purpose of executing the scheme to defraud the United States, private insurers, and the State of Texas.

### COUNT 6:  Unjust Enrichment

66.    Plaintiffs incorporate by reference all paragraphs 1-65 above, as if fully set forth herein.

67.    Defendants wrongfully received and retained the benefit of federal monies paid from the Medicaid and Medicare programs for surgeries provided to patients that were grossly deficient, materially substandard, and/or worthless, and have or will result in physical and emotional harm to many individuals across the country.

68.    Defendants were unjustly enriched with federal monies from the United States, private insurers, and the State of Texas, which Defendants should not in equity and good conscience be permitted to retain, and for which Defendants should account and disgorge to the United States, in an amount to be determined.

### IX.
### REQUEST FOR JURY TRIAL

69.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator requests a trial by jury.

### X.
### PRAYER FOR RELIEF

WHEREFORE, the Relator requests that judgment be entered in his favor and against Defendants as follows, that:

a.    Defendants cease and desist from violating the Federal False Claims Act;

b.    Defendants pay not less than $11,665.00 and not more than $23,351.00 for each violation of 31 U.S.C. § 3729, *et seq.*, plus three times the amount of damages the United States has sustained because of Defendants' misconduct;

c.    Relator be awarded the maximum Relator's share allowed, pursuant to 31 U.S.C. § 3730(d);

d.    Relator be awarded all costs of this action, including attorneys' fees and costs, pursuant to 31 U.S.C. § 3730 (d);

e.    Defendants be enjoined from concealing, removing, encumbering, or disposing of assets which may be required to pay the damages, penalties, fines, and costs awarded by the Court; and

f.    the United States, private insurers, the State of Texas, and Relator be awarded such other relief as the Court deems just and proper.

Respectfully submitted,

FROST BROWN TODD LLC

By:    /s/ Derek R. Staub
        Derek R. Staub
        State Bar No. 24063017
        dstaub@fbtlaw.com
        Faith Eaton
        State Bar No. 24094637

2101 Cedar Springs Road, Suite 900
Dallas, Texas 75201
Telephone: (214) 580-5826
Telecopier: (214) 545-3473

**ATTORNEYS FOR RELATOR**
**BLAKE N. STAUB**

JS 44  (Rev. 10/20) - TXND (10/20)

# CIVIL COVER SHEET

3-21CV2113-X

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

USA, ex rel. Blake N. Staub, M.D., Relator, on behalf of USA, Plaintiff

### DEFENDANTS

Spinal Simplicity, L.L.C., Nomen Azeem, M.D., et al.

**(b)** County of Residence of First Listed Plaintiff   N/A
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Johnson County, KS
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Derek R. Staub, Frost Brown Todd LLC, 2101 Cedar Springs Road, Suite 900, Dallas, Texas 75201; 214.545.3472

Attorneys *(If Known)*

RECEIVED
SEP - 3 2021
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[x] 1  U.S. Government
      Plaintiff

[ ] 2  U.S. Government
      Defendant

[ ] 3  Federal Question
      *(U.S. Government Not a Party)*

[ ] 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [x] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

[x] 1  Original Proceeding

[ ] 2  Removed from State Court

[ ] 3  Remanded from Appellate Court

[ ] 4  Reinstated or Reopened

[ ] 5  Transferred from Another District *(specify)*

[ ] 6  Multidistrict Litigation - Transfer

[ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 U.S.C. § 3729, et seq., 42 U.S.C. § 1320a-7b

Brief description of cause:
Company and Drs marketing and billing for improperly implanting device intended for specially trained surgeons.

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   Sep 3, 2021

SIGNATURE OF ATTORNEY OF RECORD   /s/ Derek R. Staub

**FOR OFFICE USE ONLY**

RECEIPT # DS183446   AMOUNT 400   APPLYING IFP _____   JUDGE X   MAG. JUDGE BH